Filed 11/14/14  Kagewerks, Inc. v. Kalasho CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAGEWERKS, INC. et al., | D064949 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. |
| | 37-2013-00041692-CU-BC-CTL) |
| BESSMON KALASHO et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Lepiscopo & Associates Law Firm and Peter D. Lepiscopo for Plaintiffs and Appellants.

Stephen F. Lopez APC and Stephen F. Lopez for Defendants and Respondents.

I.

INTRODUCTION

Plaintiffs Kagewerks, Inc., and Kevin Whaley, the president and chief executive officer of Kagewerks, Inc. (jointly Kagewerks), appeal from an order of the trial court granting a special motion to strike the fourth through eighth causes of action in Kagewerks's complaint against Bessmon Kalasho and Wize Guys, Inc. (jointly the defendants),[1] pursuant to the anti-SLAPP statute, Code of Civil Procedure[2] section 425.16.

Kagewerks filed this action after a dispute arose between Whaley and Kalasho over some damage that Whaley asserted had been caused to his truck when he took the truck to Kalasho's business to be cleaned and detailed. The incidents that led up to this litigation include a heated argument between Whaley and Kalasho, a dispute over payment, and, ultimately, some negative reviews of Kagewerks on Yelp.[3] Kagewerks alleges that the negative reviews were posted either by the defendants, or by someone acting in concert with the defendants, in retaliation for Whaley's complaints and his refusal to pay for the truck detailing.

---

[1]    The defendants were sued under aliases and "doing business as" entities, as well.

[2]    Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]    Yelp is a Web site "that collects consumer reviews of businesses." (*Bently Reserve L.P. v. Papaliolios* (2013) 218 Cal.App.4th 418, 423.) Yelp publishes these reviews online for the general public to access and use.

On appeal, Kagewerks contends (1) that the anti-SLAPP protections are not "applicable to this private, small, isolated and non-recurring business transaction" because the defendants' "state and federal constitutional rights were neither exercised nor subsequently threatened by" Kagewerks's libel-based causes of action; (2) that the alleged statements are "already prohibited by a private agreement," i.e., the Yelp Terms of Service Agreement, and therefore are not subject to the protections of section 425.16; and (3) that the defendants do not have standing to assert the protections of section 425.16 because Kalasho testified under oath that the defendants did not make the statements at issue.

We conclude that Kagewerks's contentions are without merit and therefore affirm the trial court's granting of the defendants' special motion to strike.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In early January 2013, Whaley took a pickup truck that was used in the operation of Kagewerks, Inc.'s business[4] to Kalasho's car detailing business to be cleaned and detailed. A dispute arose over the quality of the detailing work, and Whaley left the truck there for additional cleaning. When Whaley returned to pick up the truck, he allegedly discovered that some damage had been done to the truck's tailgate. A further dispute arose between Whaley and Kalasho regarding this damage. The dispute devolved to the

---

4    Kagewerks is in the business of designing and manufacturing "animal housing solutions" and sells its products "wholesale to the trade."

point where Whaley left Kalasho's establishment without receiving his credit card back. Whaley later called his credit card company to cancel the card and to dispute the charge that had been placed on the card by Kalasho.

In mid-January, Whaley sent a letter to Kalasho requesting reimbursement for the cost of the repairs to the damage on the truck's tailgate.

In February, two negative reviews of Kagewerks were posted on the Yelp Web site by users identified as "Sylvia R." and "Jen D." Whaley believed that the reviews had been made under false identities, either by Kalasho or by someone acting in concert with Kalasho, or that Kalasho had conspired with "Sylvia R." and "Jen D." to write the negative reviews.

After sending another letter to Kalasho seeking reimbursement and receiving no response, Kagewerks filed a complaint against the defendants in March 2013. In the complaint, Kagewerks alleged 10 causes of action, including two causes of action for libel, two causes of action for libel per se, and one cause of action for trade libel. Each of the libel-based causes of action related to Kagewerks's allegations that the defendants had published, or had conspired with someone else to publish, negative statements about Whaley and Kagewerks on the Yelp Web site.

Kagewerks alleged, for example, that the defendants, either directly or through someone else, had published the following "libelous, false, and fraudulent" statement on the Yelp Web site under the name "Sylvia R.":

4

" 'This place is a joke.  The owner Kevin Whaley was coming on to
me and making sexual remarks.  I had never been so distraught.  Of
course I was the only customer in that place and I think he felt like
no one would find out.  Kevin persisted to ask me for my number
and compliment my attire.  Geez, all I did was come in for a cage
and this is how he treats his customers.  STAY AWAY FROM THIS
PLACE.  Very unprofessional and has sexual harassment written all
over it.  Also, the cages were of cheap quality.' "

Kagewerks also alleged that the defendants, either directly or through someone

else, published the following "libelous, false, and fraudulent" statement on the Yelp Web

site under the name "Jen D.":

" 'This place is a sham.  I purchased 2 cages for my rabbits and they
were of low quality.  One of the caged [sic] started to rust and the
other was starting to fall apart after 1 month of use.  I spoke to the
owner, who came across as a smart ass and never did anything to
resolve the issue.  I will never buy cages here again.' "

In response to the complaint, Kalasho filed an anti-SLAPP motion challenging the

libel-related fourth through eighth causes of action.  Discovery in the matter ceased

pending consideration of the anti-SLAPP motion.

The trial court issued an order granting the anti-SLAPP motion on September 17,

2013, and denying Kagewerks's request for a continuance.  With respect to Kagewerks's

request for a continuance, the trial court stated:

5

"As a preliminary matter, plaintiffs Kagewerks, Inc. dba KW Cages and Kevin Whaley's (Whaley) (sometimes collectively Plaintiffs) request for a continuance pursuant to Code of Civil Procedure section 425.16 subd. (g) (section 425.16) [i]s denied. The code requires Plaintiffs to have filed a noticed motion requesting the opportunity to conduct limited discovery. Simply requesting a continuance to conduct further discovery if the Court finds that the evidence provided by Plaintiffs is insufficient is improper. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 7:1097, p. 7(II)-63.)"

With respect to the defendant's special motion to strike, the trial court concluded that the statements challenged in the fourth through eighth causes of action "arise from protected activity under section 425.16, subd[ivision] (e)(3)." The court further concluded that Kagewerks had failed to establish a probability of prevailing on these claims.

Kagewerks filed a timely notice of appeal.

III.

DISCUSSION

Kagewerks contends that the trial court erred in concluding that section 425.16, the anti-SLAPP statute, applies in this case. Specifically, Kagewerks asserts that (1) "This case does not present any facts or causes of action to invoke the anti-SLAPP protections in [section] 425.16," arguing that this case involves "a purely private matter"; (2) the anti-SLAPP statute does not apply because Yelp's Terms of Service Agreement prohibits the posting of false, fraudulent, or defamatory statements; and (3) the defendants do not have standing to seek the protections of the anti-SLAPP statute

6

because the defendants denied under oath that they themselves made the statements at issue.

A.      *Legal standards pertaining to anti-SLAPP motions*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Resolution of a special motion to strike "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).)

For purposes of an anti-SLAPP motion, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight

7

of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff . . . ." (*HMS Capital, Inc. v. Lawyers Title Co*. (2004) 118 Cal.App.4th 204, 212 (*HMS Capital*).) A plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP. [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

"Whether section 425.16 applies, and whether the plaintiff has shown a probability of prevailing, are both questions we review independently on appeal." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906; *HMS Capital*, *supra*, 118 Cal.App.4th at p. 212 [orders granting anti-SLAPP motions are reviewed de novo].)

B.     *Analysis*

1.     *The acts challenged in the complaint arise from protected activity*

The threshold issue in ruling on an anti-SLAPP motion is whether "the challenged cause of action is one arising from protected activity." (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) A protected activity is "any act" that is completed "in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).)

A defendant can meet the burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating that the act underlying the plaintiff's cause of action falls within one of the four categories identified in section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Among the protected activities identified in subdivision (e) of section 425.16 are: "(1) any written

8

or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) *any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest*, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

The two written reviews allegedly made by the defendants, or at their behest, on the Yelp Web site constitute writings made in a public forum in connection with an issue of public interest.

"Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4 (*Barrett*) citing *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*. (2005) 129 Cal.App.4th 1228, 1247; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 895; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1007; *MCSi, Inc. v. Woods* (N.D.Cal. 2003) 290 F.Supp.2d 1030, 1033; *New.Net, Inc. v. Lavasoft* (C.D.Cal. 2004)

9

356 F.Supp.2d 1090, 1107.)  "[A]lthough 'not every Web site post involves a public issue' [citation], consumer information that goes beyond a particular interaction between the parties and *implicates matters of public concern that can affect many people* is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute. [Citations.]"  (*Wong v. Tai Jing* (2010) 189 Cal.App.4th 1354, 1366-1367, italics added.)

The Yelp reviews at issue in the challenged causes of action implicate matters of public interest, within the meaning of section 425.16, subdivision (e)(3).  "Section 425.16 does not [expressly] define 'public interest,' but its preamble states that its provisions 'shall be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'  (§ 425.16, subd. (a).)"  (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039.)  In *Nygard*, the court held that " 'an issue of public interest' . . . is any issue in which the public is interested.  In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest."  (*Id*. at p. 1042, italics omitted.)  Further, the public's interest in such statements does not depend on whether the statements are true, since " '[a]ll libel, by definition, is false' "; rather, the more appropriate inquiry is whether " 'the form, context and content of the publication as a whole demonstrate that a matter of public concern is implicated.' "  (*Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1363 (*Melaleuca*), quoting *Carney v. Santa Cruz Women Against Rape* (1990) 221 Cal.App.3d 1009, 1021, 1363.)

10

The reviews at issues involve the opinions of individuals claiming to be customers regarding the quality of the products being sold by Kagewerks, as well as the customer service provided at Kagewerks. " 'Courts have recognized the importance of the public's access to consumer information. "The growth of 'consumerism' in the United States is a matter of common knowledge. Members of the public have recognized their roles as consumers and through concerted activities, both private and public, have attempted to improve their . . . positions vis-à-vis the supplies [sic] and manufacturers of consumer goods. They clearly have an interest in matters which affect their roles as consumers, and peaceful activities, such as plaintiffs', which inform them about such matters are protected by the First Amendment." ' " (*Wilbanks v. Wolk, supra,* 121 Cal.App.4th at p. 899, quoting *Paradise Hills Associates v. Procel* (1991) 235 Cal.App.3d 1528, 1544.) It is clear from the form, context, and content of the online reviews at issue that they are in the nature of consumer protection information and, as such, are matters of public interest within the meaning of the anti-SLAPP statute. (See *Melaleuca, supra,* 66 Cal.App.4th at p. 1363 ["the public has a well-recognized interest in knowing about the quality and contents of consumer goods"].)

We reject Kagewerks's contention that their claims fall outside of the reach of section 425.16 because the case was not "filed for the strategic purpose of chilling Respondents' free speech or petition rights." "When moving to strike a cause of action under the anti-SLAPP statute, a defendant that satisfies its initial burden of demonstrating the targeted action is one arising from protected activity faces no additional requirement

11

of proving the plaintiff's subjective intent [in bringing the cause of action].  [Citation.] Nor need a moving defendant demonstrate that the action actually has had a chilling effect on the exercise of such rights."  (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 88.)  It therefore is of no import whether or not Kagewerks filed the case for the purpose of chilling the defendants' free speech rights.

      2.    *Kagewerks does not explain why the existence of the Yelp Terms of Service Agreement would prevent the defendants from invoking the protections of section 425.16*

Kagewerks argues that "this Court should find that [section] 42[5.16] does not apply in this case because the alleged defamatory statements complained of by Appellants are already prohibited by private agreement, the terms of which apply to and bind Respondents.  Thus, Respondents can have no expectation of seeking protection under [section] 426.15 because they have already agreed to not make any defamatory statements on Yelp's website."  Kagewerks does not explain *why* the existence of a private agreement between the defendants and a third party would somehow preclude application of the anti-SLAPP statute, nor does Kagewerks provide any authority that would support such an argument.  We therefore treat this contention as forfeited.  (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'Appellate briefs must provide argument and legal authority for the positions taken.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." '  [Citation.]  'We are not bound

12

to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived' "].)

3. *Because Kagewerks's complaint alleges that the defendants made the statements or caused them to be made, the defendants may assert the protections afforded by section 425.16, despite having testified that they did not make the statements attributed to them*

Kagewerks contends that because the defendants "deny making the alleged defamatory statements," they "cannot, on the one hand, testify under oath that they did not make the alleged defamatory statements; while, on the other hand, claim the constitutional protection for making those statements in order to escape accountability." According to Kagewerks, the defendants lack "standing to file their SLAPP Motion because they denied that they are the real parties in interest . . . ."

Although Kagewerks's argument is a novel one, Kagewerks is simply wrong in attempting to apply standing principles to defendants' ability to seek the protections of the anti-SLAPP statute. As Kagewerks acknowledges, standing refers to the principle that " '[e]very action must be prosecuted in the name of the real party in interest.' (§ 367.)" Thus, the key to standing is that it involves the ability of a *plaintiff* to bring an *action*. (See, e.g., *Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605 [" 'The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant' "].) Standing does not refer to the ability of a defendant to defend against an action brought against him or her. Kagewerks's complaint alleges that *these defendants*, either directly or through someone else, published or caused the publication

13

of the allegedly "libelous, false, and fraudulent" reviews on Yelp. Therefore, *these defendants* may assert that, if the allegations of the complaint are taken as true, as they must be for purposes of an anti-SLAPP motion, the complaint alleges "cause[s] of action" against them that "aris[e] from" an "act of [the defendants] in furtherance of [the defendants'] right of petition or free speech under the United States or the California Constitution in connection with a public issue." (§ 426.15, subd. (b)(1).)

Inherent in the anti-SLAPP statute is the understanding that the allegations of any given complaint may not be valid, on the merits. Thus, the fact that a defendant may have a legitimate defense to a cause of action on the merits, including the defense of identity, does not undermine that defendant's ability to seek the protections of the anti-SLAPP statute by demonstrating that a particular claim arises from protected activity. "Proof that [a] defendant did not do the alleged acts or of some legal defense to liability (e.g., running of the statute of limitation) is immaterial to the first prong of the anti-SLAPP analysis—i.e., determining whether the plaintiff's claim is based on defendant's protected activities." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014 rev.) [¶] 7:938 at p. 7(II)-53, italics omitted.)[5] We therefore reject Kagewerks's contention that the defendants may not bring a special motion to strike

---

[5] Although the existence of a valid defense is immaterial to the determination whether the alleged conduct arises from protected activity, the existence of such a defense is not irrelevant to a special motion to strike: "[I]f [section] 425.16 is shown to apply, proof of a valid defense is relevant to the second prong of the analysis—i.e., determining whether there is a probability of plaintiff prevailing in the action." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014 rev.) [¶] 7:938 at p. 7(II)-53, italics omitted.)

14

simply because Kalasho testified at his deposition that the defendants did not make, nor did they conspire with anyone else to make, the allegedly libelous statements.

4. *Kagewerks has not argued that the trial court erred in concluding that Kagewerks failed to demonstrate a probability of prevailing*

Although we have concluded that the claims that Kagewerks raises in the fourth through eighth causes of action in the complaint arise from protected activity within the meaning of section 425.16, Kagewerks could have prevailed on the special motion to strike if it had established a probability of prevailing on the challenged claims. The trial court concluded that Kagewerks had not established a probability of prevailing, and therefore granted the defendants' special motion to strike. On appeal, Kagewerks has not challenged this aspect of the trial court's ruling, and has thus forfeited any such contention. (*Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 716 [points not raised on appeal are forfeited].)[6]

---

[6] Contrary to Kagewerks's assertion in its briefing that under the trial court's "analysis and application of CCP § 425.16 in this case, civil actions for defamation would be eviscerated," a finding that a challenged cause of action arises from protected activity will not inevitably render a challenged cause of action doomed. Even if a defendant establishes that the cause of action arises from an act in furtherance of the defendant's First Amendment rights, a plaintiff is entitled to proceed with the action if he or she establishes "a probability that [he or she] will prevail on the claim." (§ 425.16, subd. (b)(1).) Thus, in this case, Kagewerks's fourth through eighth causes of action would not have been stricken, despite the court's determination that they arose from protected activity, if Kagewerks had demonstrated a probability of prevailing on those causes of action.

15

IV.

DISPOSTION

The order of the trial court striking the fourth through eighth causes of action in Kagewerks's complaint is affirmed.  The defendants are entitled to costs on appeal.

_____

AARON, J.

I CONCUR:

_____

McDONALD, J.

I CONCUR IN THE RESULT:

_____

HALLER, Acting P. J.

16